### REILLY v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. December 30, 1915.)

1. MUNICIPAL CORPORATIONS ⬅️374—CONTRACTS—BREACH—EVIDENCE.

   In a sewer contractor's action against the city for payment of a progress certificate, defended on the ground that there had been an explosion during the work, which had damaged private property and caused claims to be filed against the city, a letter from a property owner to the president of the borough, desiring to know if such owner could present his claim to the city for adjudication, should have been received in evidence.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 905, 910; Dec. Dig. ⬅️374.]

2. MUNICIPAL CORPORATIONS ⬅️356—CONTRACT FOR SEWER CONSTRUCTION—BREACH—EFFECT.

   Where, by the terms of a contract for sewer construction, the city had the right to suspend the whole or any part of the work, if it deemed it for its own interest, and, during such suspension, to cause the trenches to be refilled and the roadway restored, and also to direct the plaintiff to resume work and to complete the contract after suspension, when it deemed the same for the best interest of the city, the contractor broke his contract when he neglected, on demand of the city, to repave the roadway after notification of suspension, and when he failed to resume work upon direction to do so, thereby forfeiting his right to payment under the contract, and rendering himself liable to the city for the cost to which it was put in doing the work he should have done.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 888; Dec. Dig. ⬅️356.]

3. MUNICIPAL CORPORATIONS ⬅️364—CONTRACT FOR SEWER CONSTRUCTION—BREACH BY CONTRACTOR.

   A contract for sewer construction provided that, if any damage or injury should result to private property through the negligence of the contractor, he should pay the city the expense and damage occasioned, and such amount should be charged against him, authorizing the president to deduct the same from any moneys due the contractor, also providing that such contractor should indemnify the city from all suits to which it might be subjected by reason of such injury. An explosion injurious to private property ensued during the progress of the work. Held, that the city was entitled, upon the contractor's demand, eight days after the explosion, for payment of a progress certificate, to hold the money back for a reasonable time until it could ascertain what claims would be made upon it, and it was a breach of contract for the contractor, merely because the city withheld payment, to refuse to go on with the work as required, since it was unnecessary that there should be actual claims presented; it being sufficient if the proper city officials had knowledge of probable claims for damages.

   [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 897; Dec. Dig. ⬅️364.]

Appeal from Trial Term, New York County.

Action by Thomas A. Reilly against the City of New York. From a judgment entered on a directed verdict for plaintiff, and an order

denying its motion for new trial, the City appeals. Judgment and order reversed, and complaint dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

E. Crosby Kindleberger, of New York City, for appellant.
Woolsey A. Shepard, of New York City, for respondent.

DOWLING, J. [1] On July 1, 1911, the defendant entered into a contract in writing for alterations and improvements to a sewer and its appurtenances in Seventy-Second street, between Amsterdam and Columbus avenues, together with the work incidental thereto. The plaintiff entered upon the performance of this contract, and proceeded therewith, receiving payments from time to time on the usual certificates. On November 20, 1911, a "fourth progress certificate" reached the finance department of the city of New York; the amount thereof being $1,229.90. The contract provided that, if the amount payable thereunder did not exceed $5,000 (which was the case here), then payments were to be made to the contractor as the work progressed (in conformity with the terms of the Greater New York Charter [Laws 1901, c. 466]), by progress payments of 70 per cent. of the amount of work performed under the contract, provided the amount on each installment should amount to $1,500. On November 23, 1911, an explosion took place in a toolhouse along the line of the work under the control of the plaintiff, by reason whereof a passer-by was killed, and damage done both to city and to private property. An engineer of the department of finance arrived on the work at 10 o'clock on that morning, and, finding all operations stopped because of the explosion, on the following day, November 24th, reported the situation to the examiner in charge of the division of inspection, in connection with the voucher for $1,229.90 heretofore referred to, stating as follows:

"The sewer built exceeds the measurement allowed in the estimate, and the amount is therefore due. It was on this contract that the explosion occurred yesterday, November 23, 1911, causing extensive damage to property and the injury of several persons. In view of the possibility of suits being brought against the city and the contractor, I deem it advisable to call your attention to these facts."

Upon this report a notation was made:

"Do not make any payments on this work until the matter of the explosion has been settled. C. S. Hervey. November 24, 1911."

Meantime the attention of the city officials had been brought to the explosion and damage by publications in the city newspapers. On November 23, 1911, J. C. Weir wrote to the president of the borough of Manhattan as follows:

"An explosion of dynamite this morning in the work of a sewer construction in front of my residence, 123 West Seventy-Second street, has caused material damage, and I desire to know if I can present my claim to the city for adjudication. Thanking you for your prompt reply, I am, yours very truly."

This letter was not received in evidence, but only marked for identification; however, the fact was referred to in the testimony of the deputy comptroller, Matthewson, that such a claim had been filed by Weir, and the letter should have been received in evidence. Plaintiff, on a date which he fixes as November 24, 1911, called upon Deputy Comptroller Matthewson and demanded payment of the amount of his certificate, and was refused; the deputy saying:

"There are going to be claims here; we won't pay it."

Plaintiff replied:

"You are only anticipating there are going to be claims; there are none filed now."

To which the deputy answered:

"Well, that makes no difference; we won't pay now."

Defendant admits that he was first sent to the lien clerk, but he denies that he knew anything about liens having been filed against him, although it does appear that there had been such liens filed, which, however, were not for damages due to the explosion, and which are not material to this controversy, as the refusal to pay was not based on that ground. On cross-examination, plaintiff admitted that the deputy, when the demand was made for the money, knew of the explosion and inquired about it, and refused to pay on account of claims that would be filed on account thereof. He also admitted receiving a letter on December 4, 1911, from the president of the borough of Manhattan, wherein he was directed to suspend work on his contract until such time as further notice to proceed with the work should be given him, and was further directed to refill the trenches then open, restore the roadway over the same, and relay a permanent pavement over the 240 feet of the trench already back-filled. The work was to be done within 48 hours of the receipt of the notice. He acknowledged the receipt of the letter in writing, under date of December 5th, and therein wrote to the borough president:

"I do not think it is to the best interests of the city that I should suspend work on this contract until such time as further notice to proceed with the work shall be given me. I believe it to be to the best interests of the city to make payments to me to which I am entitled under the contract and have me to proceed with the work."

As a matter of fact, he never did this work which he was called upon to do. Then, on March 18, 1912, he was notified by the city—

"to resume work April 1, 1912, upon your contract with this department for the alteration and improvement of sewer and appurtenances in Seventy-Second street, between Amsterdam and Columbus avenues."

To this, on March 21, 1912, he replied in writing, refusing to comply with the notice, and standing upon the claim that the city had defaulted in, and broken, its contract with him by failure to make the payment of $1,229.90, which became due about December 1, 1911, as he contended, and further by suspending his work on the contract in violation of his rights and against the interests of the city. He never did resume the work under his contract.

[2] There is no doubt that under the provisions of the contract between the plaintiff and the defendant the city had the right under clause M thereof to suspend the whole or any part of the work contracted to be done if it should deem it for the interest of the city, and furthermore, during such suspension, to cause the trenches to be refilled and the roadway over the same property restored. Nor can there be any question that the city had the right, under the contract between it and the plaintiff, to direct the plaintiff to resume work and to complete the contract when it deemed the same for the best interest of the city. Therefore the plaintiff has breached the contract with the defendant, and not only forfeited his right to payment under the contract, but rendered himself liable to the city for the cost to which it was put in doing the work which he should have done, unless the city itself was first in default, and was guilty of a breach of the contract by failure to pay the amount of the certificate in question to the plaintiff upon his demand.

Deputy Comptroller Matthewson fixes the date of the conversation between the plaintiff and himself as December 1, 1911, verifying it by reference to his memoranda, and that date has been accepted as the correct one by the trial court. He testified that he knew when plaintiff called upon him that there had been considerable damage done as a result of the explosion on the plaintiff's work, and that, although no claim had been filed with the finance department, a claim had been filed with the borough president. He had also learned of the explosion and damage which had followed it from the newspapers, and he told plaintiff in substance that he wanted time to find out what the claims amounted to, and how much it would be necessary to withhold to protect the city, or that in the alternative the plaintiff would have to give the city a bond. He said that claims were anticipated, as they had knowledge that there were damages, and claims followed damages, and insisted that the refusal to pay was only until they had ascertained the amount of the claims or plaintiff gave them a bond. At this time he also knew officially through Mr. Prial, in his office, of the explosion and damages.

The court below, in directing a verdict for plaintiff in the face of the proof as to the failure of the plaintiff to obey the city's direction to suspend work and to relay the pavement, and his refusal to proceed with the work when directed (necessitating reletting to new contractors), did so because he held as a matter of law that there was a repudiation of the contract by the city in its refusal to pay the amount of the warrant on December 1st, and that, inasmuch as no claims had then actually been filed with the finance department, the city had no right to withhold payment of the certificate or to ask for the bond, even though it knew that damage had followed the explosion on the plaintiff's work. The case, therefore, turns solely on the question of whether, on December 1st, when plaintiff demanded payment of the amount of the certificate, the city had a right to refuse to make immediate payment thereof. We think that under the contract between the parties the city had the right to withhold payment for a reasonable time, in view of all the circumstances, within which to de-

termine whether it could safely pay the plaintiff the amount then certified upon his contract.

[3] The clauses of the contract bearing upon this are W and Z, as follows:

"W. The contractor shall sustain in their places and protect from injury all water or gas mains, conduits, subways, or service pipes, steam pipes, and pneumatic pipes, and all sidewalks, curbs, stoops, areas, and all other property in the vicinity of his work from direct or indirect injury by caving or otherwise, and he hereby assumes all expenses for direct or indirect damage which may be occasioned by injury to any of them; and the contractor shall at all times have a sufficient quantity of timber and plank, chains, etc., on the ground, and shall use the same as required, for bracing and sheet-piling the sides and ends of excavations, and for sustaining and supporting the sides and any and all pipes, conduits, subways, or other structures that are undermined, weakened, endangered, or threatened; and in case any damage or injury shall or may result to the said pipes, conduits, subways, lamp posts, and lamps, and other works or structures of any gas electric, railroad, or other company whatsoever, or to any private property, through or by the reason of any negligence, carelessness, or want of skill on the part of the contractor, his agents or servants, the contractor shall pay such amount as may be sufficient to cover the expense and damages occasioned by such negligence, carelessness, or unskillfulness; and such amount shall be charged against the contractor, and the president is hereby authorized to deduct and retain from any moneys which may be due, or which shall become due, to the contractor, a sum sufficient, in his judgment, to cover the cost of repairing any such damages, expenses, or loss, and to apply said sum so deducted and retained to said repairs or renewals, or to reimburse the parties so damaged or injured."

"Z. The contractor shall place proper guards for the prevention of accidents, and shall put up and keep up suitable and sufficient lights at night, and when necessary, during the delivery of materials or supplies, to prevent accident or injuries to the person or property of another, and he will indemnify and save harmless the city from all suits or actions and damages or costs of every name and description to which the city may be subjected or put by reason of injury to the person or property of another resulting from negligence or carelessness on the part of the contractor, his servants or agents, in the delivery of the materials and supplies, or by or on account of any act or omission of the contractor, his servants or agents, and the whole or so much of the moneys due or to grow due the contractor under this agreement as shall or may be considered necessary by the comptroller of the city shall or may be retained by the city until all such suits or claims for damages shall have been settled or otherwise disposed of, and evidence to that effect furnished to the satisfaction of the comptroller."

Under these clauses it was not necessary there should be actual claims against the city presented, but it was sufficient if the proper city officials had knowledge of the explosion upon the work, of the fact that plaintiff was claimed to be responsible for it occurrence, of damage done to city or private property, and of the probability or possibility of the presentation of claims therefor. Nor were the city authorities bound to assume that the contractor alone would be sought to be held liable, and not the city as well, until investigation had satisfied them thereof. They were therefore entitled to a reasonable time after the happening of the explosion to satisfy themselves as to what, if any, liability was claimed to exist upon the part of the city, before they could be called upon to pay the amount of the outstanding certificate. Nothing in the contract, nor in the course of dealing between the parties, demonstrates that the city was in default on December 1st, when demand was made for payment; and only eight days hav-

ing elapsed since the happening of the explosion, it cannot be said that the determination of the city authorities to take a longer time to satisfy themselves as to what they should do to protect the city's interests was unreasonable under the contract. Therefore, the city not being in default, and not having broken the contract, the plaintiff himself breached it by his subsequent refusals to suspend the work and close up the trenches, and again to resume the work, and is not entitled to recover under his contract.

The city upon the trial not having asked for affirmative relief against the plaintiff, and not doing so upon this appeal, the judgment and order will be reversed, with costs, and the complaint dismissed, with costs to the appellant. All concur.